Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

DOLLS KILL, INC.,

*Defendant*.

Case No. 4:24-cv-02040

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## Table of Contents

I. Introduction. .......... 1

II. Parties .......... 4

III. Jurisdiction and Venue. .......... 4

IV. Facts. .......... 4

A. Defendant's fake prices and fake discounts. .......... 4

B. Defendant's advertisements are unfair, deceptive, and unlawful. .......... 11

C. Defendant's advertisements harm consumers. .......... 13

D. Plaintiff was misled by Defendant's misrepresentations. .......... 14

E. Defendant breached its contract with and warranties to Ms. Echeverria-Corzan and the putative class. .......... 16

F. No adequate remedy at law. .......... 17

V. Class action allegations. .......... 17

VI. Claims. .......... 19

First Cause of Action: Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 & 17501 et. seq. .......... 19

Second Cause of Action: Violation of California's Consumer Legal Remedies Act .......... 20

Third Cause of Action: Violation of California's Unfair Competition Law .......... 23

Fourth Cause of Action: Breach of Contract .......... 24

Fifth Cause of Action: Breach of Express Warranty .......... 25

Sixth Cause of Action: Quasi-Contract/Unjust Enrichment .......... 26

Seventh Cause of Action: Negligent Misrepresentation .......... 27

Eighth Cause of Action: Intentional Misrepresentation .......... 28

VII. Relief. .......... 28

VIII. Demand for Jury Trial. .......... 29

## I. Introduction.

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7.     So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.     Defendant Dolls Kill, Inc. ("Defendant" or "Dolls Kill") sells and markets clothing and accessories products online through the Dolls Kill brand and website, www.dollskill.com ("Dolls Kill Products" or "Products").

9.     On its website, Defendant lists purported regular prices and advertises purported time-limited discounts from those listed regular prices.  These include limited-time discounts offering "up to X% off" and "X% off."  The discounts are made available by using a discount code, such as "XXTRA25."  Defendant uses countdown clocks to represent that its sales are on the verge of ending.  Defendant also advertises that its Products have a lower discount price as compared to a higher, regular price shown in grey and/or strikethrough font.  Examples are shown below:





$37.12 W/ CODE
$58 $46.40
$60.00 W/ CODE
$150 $75

10. Far from being time-limited, however, Defendant's discounts are regularly available. As a result, everything about Defendant's price and purported discount advertising is false. The regular prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are routinely available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time or expiring after the countdown clock runs out—quite the opposite, they are consistently available using a discount code.

11. As described in greater detail below, Ms. Echeverria-Corzan bought items from Defendant from its website, www.dollskill.com. When Ms. Echeverria-Corzan made her purchase, Defendant advertised that a sale was going on, and so Defendant represented that the Products Ms. Echeverria-Corzan purchased were being offered at a steep discount from their purported regular prices that Defendant advertised. And based on Defendant's representations, Ms. Echeverria-Corzan believed that she was purchasing Products whose regular price and market value were the purported regular prices that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Ms. Echeverria-Corzan to buy from Defendant when she did.

12. In truth, however, the representations Ms. Echeverria-Corzan relied on were not true. The purported regular prices were not the true regular prices that Defendant sells the products for, the purported discounts were not the true discounts, and the discounts were ongoing—not time-

limited. Had Defendant been truthful, Ms. Echeverria-Corzan and other consumers like her would not have purchased the Products, or would have paid less for them.

13. Plaintiff brings this case for herself and the other customers who purchased Dolls Kill Products.

## II. Parties

14. Plaintiff Sonni Echeverria-Corzan is domiciled in Oakland, California.

15. The proposed class includes citizens of every state.

16. Defendant Dolls Kill, Inc. is a Delaware corporation with its principal place of business in Richmond, California.

## III. Jurisdiction and Venue.

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18. The Court has personal jurisdiction over Defendant because Defendant sold Dolls Kill Products to consumers in California, including to Plaintiff.

19. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Dolls Kill Products to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

20. Divisional Assignment. This case should be assigned to the San Francisco/Oakland division. *See* L.R. 3-2(c). A substantial part of the events giving rise to the claims occurred in Oakland, California.

## IV. Facts.

### A. Defendant's fake prices and fake discounts.

21. Defendant Dolls Kill manufactures, distributes, markets, and sells clothing and accessories products. Defendant sells its Products directly to consumers through its website, www.dollskill.com.

22. On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

23. On its website, Defendant regularly advertises steep sitewide discounts on its Products using a coupon code. These discounts offer "X%" or "up to X%" off the listed regular prices Defendant advertises. Even though in truth these discounts run in perpetuity, Defendant prominently claims they are limited-time and expiring after the countdown clock runs out. And it advertises these discounts extensively: on an attention-grabbing banner at the top of every webpage of its website; in a large banner image on its homepage; on the products listing pages, next to images of each Product; and on the individual product pages for each Product. Example screenshots are provided on the following pages:



*Captured on May 21, 2023*



*Captured on July 18, 2023*

*Captured on October 13, 2023*

*Captured on December 24, 2023*



*Captured on January 20, 2024*



*Captured on February 29, 2024*



$37.12 W/ CODE

~~$58~~ $46.40

$60.00 W/ CODE

~~$150~~ $75

*Captured on January 20, 2024*

*Captured on June 8, 2023*



*Captured on March 15, 2024*

24.     To obtain the advertised discounts, consumers generally must enter an advertised promo code.  The promo code is prominently displayed in bold in a banner at the top of every page of Defendant's website, including on the homepage, product pages, and search pages.  As described and shown above, the sale is extensively advertised throughout Defendants' website.  So, the overwhelming majority (if not all) of Defendant's sales are made using the promo codes, at the advertised discount price (and not the supposedly regular list price).

25.     Defendant represents that these discounts will only be available for a limited time, but in reality, they are offered consistently.  For example, as depicted below, Defendant represents that its sales expire when the countdown clock expires, for example: "00:09:16:05."  To reasonable consumers, this means that after countdown clock runs out, Defendant's Products will no longer be on sale and will retail at their purported regular price.  But after the purportedly time-limited sale ends, Defendant generates another similar discount, with a countdown clock.

26.     For example, on October 13, 2023, Defendant advertised a purportedly time-limited sale that would expire after "00:09:16:05" (9 hours, 16 minutes, 5 seconds).



*Captured on October 13, 2023*

27.     However, on October 14, 2023, the day that the time-limited sale was supposed to have ended, Defendant advertised the same sale with a new countdown clock.



*Captured on October 14, 2023*

28.     Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion and use the prominently advertised promo code.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower

price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

29. Based on Defendant's advertisements, reasonable consumers reasonably believe that the prices displayed in "strikethrough font" (*e.g.*, "~~$55.00~~") are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the listed strikethrough regular prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the limited-time sale began. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers buying from Defendant on its website had to pay the regular price to get the item and did not have the opportunity to get a discount from that regular price.

30. Reasonable consumers also reasonably believe that the listed regular prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant regularly offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The regular prices Defendant advertises are not actually Defendant's regular or former prices, or, as discussed below, the prevailing prices for the Products Defendant sells. And, the listed regular prices do not represent the true market value for the Products, because Defendant's Products are consistently available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts time-limited or ending after the countdown clock runs out—quite the opposite, they are regularly available.

**B. Defendant's advertisements are unfair, deceptive, and unlawful.**

31. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code

§ 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

32. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

33. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

34. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

35. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

36. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C.      Defendant's advertisements harm consumers.**

37.      Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendant usually sells its Products and that these are former prices that Defendant sold its Products at before the time-limited discount was introduced.

38.      Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

39.      In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

40.      Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2]

41.      Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3]

42.      Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).
[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**D.    Plaintiff was misled by Defendant's misrepresentations.**

43.    On January 10, 2024, Ms. Echeverria-Corzan purchased a pair of Sweet Bat Behavior Jogger Sweatpants and a Sweet Bat Behavior Cropped Hoodie from Defendant's website.  She made this purchase while living in Oakland, California.  In the email order confirmation that Defendant sent to Ms. Echeverria-Corzan after she made her purchase, Defendant represented that the Sweet Bat Behavior Jogger Sweatpants had a regular price of $36.00, that Ms. Echeverria-Corzan was receiving a discount of $7.20, and that the discounted price is $28.80.  Defendant also represented that the Sweet Bat Behavior Cropped Hoodie had a regular price of $34.80, that Ms. Echeverria-Corzan was receiving a discount of $6.96, and that the discounted price is $27.84.



44. In short, Defendant represented that the Products had a certain regular price and that Ms. Echeverria-Corzan was receiving a substantial discount for the items that she purchased.

45. Ms. Echeverria-Corzan read and relied on Defendant's representations, specifically that the Products were being offered at a discount for a limited time and had the regular prices listed above. For example, she relied on the red strikethrough regular price of "~~$36.00~~," the discounted price of "$28.80," and the discount of "-$7.20." Based on Defendant's representations described and shown above, Ms. Echeverria-Corzan reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular price, that this regular price was the market value of the Products that she was buying, that she was receiving the advertised discount as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion). She would not have made the purchase if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discount.

46. In reality, as explained above, Defendant's products, including the Products that Ms. Echeverria-Corzan purchased, are consistently available at a discounted price of off the purported regular prices. In other words, Defendant did not regularly sell the Products Ms. Echeverria-Corzan purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sale was not limited time—Defendant's products are regularly on sale.

47. Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

**E.     Defendant breached its contract with and warranties to Ms. Echeverria-Corzan and the putative class.**

48.     When Ms. Echeverria-Corzan, and other members of the putative class, purchased and paid for the Dolls Kill Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases.  Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

49.     Defendant's website and email confirmations list the market value of the items that Defendant promised to provide (which, for Ms. Echeverria-Corzan, are shown above).  Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Ms. Echeverria-Corzan and putative class members (also shown above for Ms. Echeverria-Corzan).  For example, Defendant offered to provide Ms. Echeverria-Corzan (among other things) the Sweet Bat Behavior Jogger Sweatpants with a market value of $36.00, and to provide a discount of $7.20.  Defendant also warranted that the regular price and market value of the Products Ms. Echeverria-Corzan purchased was the advertised list price and warranted that Ms. Echeverria-Corzan was receiving a specific discount on those Products.

50.     The regular price and market value of the items Ms. Echeverria-Corzan and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract.  They were also affirmations of fact about the Products and a promise relating to the goods.

51.     Ms. Echeverria-Corzan and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

52.     Defendant breached its contract by failing to provide Ms. Echeverria-Corzan and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.  Defendants also breached warranties for the same reasons.

**F. No adequate remedy at law.**

53. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

54. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

55. In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain that obtaining a refund in equity.

56. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

**V. Class action allegations.**

57. Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more Dolls Kill Products advertised at a discount on Defendant's website.
- California Subclass: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Dolls Kill Products advertised at a discount on Defendant's website.

58. The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

59. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

60. Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

61. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

62. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased the Dolls Kill Products advertised at a discount from Defendant. There are no conflicts of interest between Plaintiff and the class.

***Superiority***

63. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be

unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**First Cause of Action:**

**Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiff and the California Subclass)**

64. Plaintiff incorporates each and every factual allegation set forth above.

65. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

66. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

67. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

68. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$36.00~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethough font from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

69. The prices advertised by Defendant are not Defendant's regular prices. In fact, those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is regularly a heavily-advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are time-limited and expiring after the countdown clocks run out are false and misleading too.

70. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

71. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Dolls Kill Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

72. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dolls Kill Products.

73. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

74. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Dolls Kill Products if they had known the truth, and/or (b) they overpaid for the Products because the Dolls Kill Products were sold at a price premium due to the misrepresentation.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(by Plaintiff and the California Subclass)**

75. Plaintiff incorporates each and every factual allegation set forth above.

76. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

77. Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

78.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

79.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

80.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

81.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

82.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

83.     Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

84.     And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (*e.g.*, "Friday the 13th," when in fact the sale is ongoing and not limited to Friday the Thirteenth).

85.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

86.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Dolls Kill Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

87.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dolls Kill Products.

88.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

89.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Dolls Kill Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

90.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Echeverria-Corzan, on behalf of herself and all other members of the subclass, seeks injunctive relief.

91.     CLRA § 1782 NOTICE.  On March 14, 2024, a CLRA demand letter was sent to Defendant's California headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

92.     A CLRA venue declaration is attached.

**<u>Third Cause of Action</u>:**

**Violation of California's Unfair Competition Law**

**(by Plaintiff and the California Subclass)**

93. Plaintiff incorporates each and every factual allegation set forth above.

94. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

95. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

96. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1, § 233.2.

***The Deceptive Prong***

97. As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

98. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

99. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

100. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

101. Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

102. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

103. Plaintiff and the subclass could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

104. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

105. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Dolls Kill Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

106. In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Dolls Kill Products.

107. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

108. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Dolls Kill Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

## Fourth Cause of Action:

## Breach of Contract

## (by Plaintiff and the Nationwide Class)

109. Plaintiff incorporates each and every factual allegation set forth above.

110. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

111. Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website.

112. The contracts provided that Plaintiff and class members would pay Defendant for the Products purchased.

113. The contracts further required that Defendant provides Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website. They also required that Defendant provide Plaintiff and class members with a discount equal to the difference between the price paid, and the regular prices advertised. These were specific and material terms of the contract.

114. The specific discounts were a specific and material term of each contract.

115. Plaintiff and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

116. Defendant breached its contracts with Plaintiff and class members by failing to provide Products that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Defendant did not provide the discount that it had promised.

117. Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's headquarters and registered agent on March 14, 2024.

118. As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiff and the California Subclass)**

119. Plaintiff incorporates each and every factual allegation set forth above.

120. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

121. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Dolls Kill Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

122. This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

123. In fact, the Dolls Kill Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

124. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters and registered agent on March 14, 2024.

125. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Dolls Kill Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(by Plaintiff and the Nationwide Class)**

126. Plaintiff incorporates each and every factual allegation in paragraphs 1-47, 53-63 above.

127. Plaintiff brings this cause of action in the alternative to her Breach of Contract claim (Claim IV) on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

128. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Dolls Kill Products and to pay a price premium for these Products.

129. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

130.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

131.    Plaintiff and the class seek restitution, and in the alternative, rescission.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiff and the California Subclass)**

132.    Plaintiff incorporates each and every factual allegation set forth above.

133.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

134.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

135.    These representations were false.

136.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

137.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

138.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dolls Kill Products.

139.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

140.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Dolls Kill Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**<u>Eighth Cause of Action</u>:**

**Intentional Misrepresentation**

**(by Plaintiff and the California Subclass)**

141. Plaintiff incorporates each and every factual allegation set forth above.

142. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

143. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

144. These representations were false.

145. When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

146. Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

147. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Dolls Kill Products.

148. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

149. Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Dolls Kill Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**VII. Relief.**

150. Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;

- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII.  Demand for Jury Trial.

151.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: April 3, 2024

Respectfully submitted,

By: */s/ Christin Cho*

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*